UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| AMIGOS LABOR SOLUTIONS, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:05-CV-1644-B |
| | § | |
| TEXAS SUPREME COURT | § | |
| UNAUTHORIZED PRACTICE OF LAW | § | |
| COMMITTEE | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM ORDER

Before the Court is Defendant Texas Supreme Court Unauthorized Practice of Law Committee's Rule 12(b)(1) Motion to Dismiss (doc. 5). At issue is whether this declaratory judgement action presents a sufficient case or controversy to sustain the Court's subject matter jurisdiction. Finding that Plaintiff has failed to allege more than an abstract controversy between the parties - yet to manifest in concrete facts - the Court **GRANTS** the Unauthorized Practice of Law Committee's Motion to Dismiss for want of subject matter jurisdiction.

## I.  BACKGROUND

### A.  Factual Background [1]

Plaintiff Amigos Labor Solutions, Inc. ("Amigos") is a corporation that helps employers obtain visas for their nonimmigrant alien laborers. (Pl.'s Orig. Compl. ["Compl."] at 1) Amigos'

---

[1]The background facts are derived from Plaintiff's Original Complaint and on undisputed facts gleaned from the parties' court papers and corresponding attachments. Where there may be a dispute over a stated fact the Court has so indicated by claiming the fact as one stated by that party to be true.

concerns about potential enforcement action by the Texas Supreme Court Unauthorized Practice of Law Committee (the "UPLC") underlie the present action. More precisely, in March 1999 the Dallas Subcommittee of the UPLC notified Amigos via letter that it "may have" engaged in the unauthorized practice of law. (*Id.* at ¶ 1) Robert Wingfield, owner of Amigos, responded in writing telling the UPLC that Amigos was acting as an "agent" of its customers as permitted under 8 C.F.R. § 214.2(h) and thus not engaged in the unauthorized practice of law. (*Id.* at ¶ 2) The UPLC sent Amigos a similar letter in July 2002. (*Id.* at ¶ 3) Wingfield responded to the July letter, once again maintaining his company's "agent" status. (*Id.* at ¶ 4) In January 2003 Wingfield appeared at a hearing before the Dallas Subcommittee of the UPLC regarding the issue addressed in the letters. (Ex. A (letter) to Pl.'s Resp.) He contends that he expected to hear from the UPLC about the status of the investigation within 45 days after the hearing but has not been contacted or received any response to his inquiries. (Ex. A (letter) and Ex. A (decl.)to Pl.'s Resp.) With no formal resolution from the UPLC to date, Amigos complains it is left in a state of uncertainty about the legal consequences of its future business practices, particularly in light of the enforcement action filed in 2004 by the UPLC against Foley Enterprises, a company providing similar services. (Pl.'s Resp. at 2 n.1, 6; Compl. at ¶ 5) Amigos urges that its concerns about a potential UPLC enforcement action are reinforced by statements allegedly made by a UPLC Subcommittee chairman, Robert Kershaw, that the UPLC was committed to putting Amigos and other similar companies out of business. (Pl.'s Resp. at 2 and Exs. A (decl.), B)

   The UPLC dismisses Amigos' concerns as "paranoia" and counters that the previous investigations are closed with no recommendation that the UPLC take action. (Def.'s Mot. to Dismiss at 7 and Exs. A, B) Further, the UPLC maintains that no new investigation is pending or

can be commenced unless it receives a new complaint against Amigos - which it has not.  (*Id.*)

## B.  Procedural Background

On August 16, 2005, Amigos filed this declaratory judgment action against the UPLC. Fearing that the UPLC will take legal action against it and try to put the company out of business, Amigos seeks a declaration from this Court that under 8 C.F.R. § 214.2(h) non-lawyers are permitted to act as "agents" for employers when filing petitions for temporary workers to be admitted into the United States as nonimmigrant alien laborers.  (Compl. at 6)  Plaintiff seeks an additional declaration that the UPLC cannot take enforcement action against Amigos or against similarly-situated entities because of their classification as agents under federal law.  (*Id.*)

The UPLC filed this Rule 12(b)(1) Motion to Dismiss on September 6, 2005 on several grounds including whether the suit constitutes a genuine case or controversy.  Because the case or controversy ground is determinative of the motion to dismiss, the Court confines its analysis to this issue.

## II.  LEGAL STANDARD

A court must dismiss a case for lack of subject matter jurisdiction under Rule 12(b)(1) where it lacks the statutory or constitutional power to adjudicate the case.  *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998).  A party moving for dismissal under Rule 12(b)(1) may bring either a "facial" or "factual" attack on the existence of subject matter jurisdiction.  A "facial attack" limits the court's inquiry to the allegations contained in the complaint while a "factual attack" permits the court to consider matters outside the pleadings.  *Williamson v. Tucker*, 645 F.2d 404, 413-14 (5th Cir. 1981).  In "factual attacks", "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the

trial court from evaluating for itself the merits of jurisdictional claims." *Id.* Ultimately, depending on the nature of the jurisdictional challenge - "facial" or "factual" - a court may rely upon any one of three bases in making its decision: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Id.*

Here, the UPLC presents a "factual attack" on subject matter jurisdiction by relying upon facts outside the pleadings. (Def.'s Mot. to Dismiss and Exs.) Amigos, likewise, relies upon matters beyond the pleadings in its response. (Pl.'s Resp. And Exs.) Accordingly, the Court will consider these outside facts in reaching a decision on subject matter jurisdiction. At the same time, however, the Court finds no need to resolve disputed facts because the parties essentially agree on all material facts underlying the jurisdictional issue. There is no dispute that the UPLC contacted Amigos and warned them that their activities "may" constitute the unauthorized practice of law. Nor does either party challenge the factual basis for the UPLC's concern. The parties likewise do not dispute that Amigos contends its activities are lawful as an "agent" of its customers. Where the parties' part company is whether the likelihood of an enforcement action by the UPLC is real and immediate (Amigos) or abstract (UPLC). The Court can resolve this issue by examining the undisputed facts and looking to the case authority, recalling at all times that the burden of proof in a Rule 12(b)(1) motion rests with the party asserting the existence of federal subject matter jurisdiction. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001); *St. Paul Reinsurance Co., Ltd. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998).

### III. ANALYSIS

Federal courts only have the power to decide actual cases or controversies. U.S. CONST. art.

III, § 2.  In determining whether the case or controversy requirement has been met in the context

of a declaratory judgment action, the Supreme Court has directed courts to consider "whether the

facts alleged, under all the circumstances, show that there is a substantial controversy, between

parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of

a declaratory judgment." *Maryland Cas. Co. v. Pac. Coal and Oil Co.*, 312 U.S. 270, 273 (1941).

This determination is often difficult to make, as "[t]he difference between an abstract question and

a 'controversy' contemplated by the Declaratory Judgment Act is necessarily one of degree." *Id.*   In

any event, "[a]bstract injury is not enough." *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974) Rather,

the allegations must establish that the plaintiff either has sustained an injury or is in immediate

danger of sustaining an injury. *Id.* (citing *Massachusetts v. Mellon*, 262 U.S. 447, 488 (1923)).

_____Here, the essence of Amigos' assertion of a case or controversy can be boiled down to three

points.   First, it received letters from the UPLC stating that it "may have" engaged in the

unauthorized practice of law and, after appearing at a hearing, has yet to receive formal notice that

the investigation of this matter has been officially closed.  (Compl. at ¶ 1-5)  Second, because Amigos

ascribes a different meaning to the word "agent" under 8 C.F.R. § 214.2(h) than does the UPLC,

Amigos contends it "could be" prosecuted by the UPLC for the unauthorized practice of law.  ( *Id.*

at ¶ 5-15; Pl.'s Resp. at 5)   Third, the UPLC, filed an enforcement action in 2004 against another

company performing similar services, and a representative from that company reports hearing that

the UPLC was "committed" to putting Amigos out of business.  (Compl. at ¶ 5; Pl.'s Resp. at 2 n.1,

5-6)

Even accepting Amigos' entire version of events as true, including the purported statement

that the UPLC was committed to putting Amigos out of business, the "controversy" exists only in

the abstract - yet to manifest in specific, concrete facts.  More to the point, it is undisputed that the UPLC simply cannot act without a complaint and further undisputed that there is no pending complaint.  In other words, the UPLC's hands are tied.  It has no power - and Amigos does not argue otherwise - to take legal action against Amigos unless the following chain of events takes place: a complaint is filed against Amigos and assigned to a UPL Subcommittee, the complaint is thoroughly investigated, a majority of the UPL Subcommittee votes to recommend the filing of a lawsuit to the UPLC, the chairperson of the Subcommittee presents the issue to the UPLC, and a majority of the UPLC votes to authorize the filing of a lawsuit against Amigos.  (Ex. A to Def.'s Mot. to Dismiss)  Though "[t]he fact that the filing of the lawsuit is contingent upon certain factors does not defeat jurisdiction", the courts must examine the "'practical likelihood that the contingencies will occur.'" *Orix Credit Alliance, Inc. v. Wolfe*, 212 F. 3d 891, 897 (5th Cir. 2000) (quoting *Associated Indem. Corp. v. Fairchild Indus., Inc.*, 961 F. 2d 32, 35 (2d Cir. 1992) (citation omitted)).  At this time, with no complaint even pending against Amigos, the likelihood of an enforcement action is too tenuous to constitute an actual controversy.  Clearly, the events which Amigos seeks to forestall, "'may not occur at all'".  *Orix Credit Alliance, Inc.*, 212 F.3d at 897 (citations omitted).

This Court's decision is buttressed by the Fifth Circuit's holding in *Middle South Energy, Inc. v. City of New Orleans,* 800 F.2d 488 (5th Cir. 1986).  There, the City of New Orleans (the "City") retained an option to purchase the electrical facilities of New Orleans Public Service, Inc. ("NOPSI"), the utility company providing electricity to the City.  *Id.* at 489.  Before it could exercise its option, the City Council was required to vote on the acquisition of NOPSI's facilities.  *Id.* at 490. While the City began to take some actions in preparation for a possible purchase of NOPSI's facilities at some point in the future, a vote by the City Council never occurred.  *Id.*  NOPSI subsequently

filed a declaratory judgment action to determine issues surrounding the transfer of some of its interests to the City along with the transfer of the electrical facilities. *Id.* The district court dismissed the case for lack of subject matter jurisdiction because the City never exercised its option. *Id.* The Fifth Circuit affirmed: "Until the City Council actually votes to exercise the purchase option, we must be careful to 'avoid imposition under [our] jurisdiction through obtaining futile or premature interventions, especially in the field of public law.'" *Id.* at 491 (quoting *Public Service Comm'n of Utah v. Wycoff*, 344 U.S. 237, 243 (1952)).

In both *Middle South* and in this case, the defendant's failure to act prevents the plaintiff from presenting a justiciable case or controversy.[2]  As the lack of a City Council vote to exercise its option prevented the *Middle South* district court from having jurisdiction to hear the declaratory judgment action, so the absence of a UPLC vote to commence legal action against Amigos (and all the steps leading up to it) prevents this Court from having jurisdiction over Plaintiff's action.

In sum, the UPLC has taken no action against Amigos since 2003, and it is not disputed that the prior investigations of the company are closed.  Amigos' fears are too tenuous, too contingent upon multiple future events to constitute an actual controversy between the parties.  Because no actual controversy exists, the Court has no subject matter jurisdiction over this declaratory judgment action, and it must be dismissed.

---

[2]In *Middle South*, the City Council chairman testified that the Council did not have current plans to purchase NOPSI's facilities, and this was relied on by the court in its decision to dismiss the case. *Middle South*, 800 F.2d at 490.  Similarly, Defendant has provided the declaration of Charles W. Gameros, Jr., Chairman of the Dallas Subcommittee of the UPLC, stating that the Dallas Subcommittee has never recommended that the UPLC take legal action against Amigos and that no investigation of the Plaintiff is pending at this time.  (Ex. B to Def.'s Mot. to Dismiss)

## IV.  CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant Texas Supreme Court Unauthorized Practice of Law Committee's Motion to Dismiss.  This case is accordingly **DISMISSED** for want of subject matter jurisdiction.


SO ORDERED.

SIGNED February 9th, 2006

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE